CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2026 MAR 31  A 11: 2̃

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE AMBRIOLA COMPANY, INC. and GENNARO AURICCHIO, S.P.A, <br><br> Plaintiffs, <br><br> vs. <br><br> J.V.M. SALES CORP. and BOZZUTO'S, INC., <br> Defendants. | Civil Case No. _____ <br><br> **FILED *EX PARTE* AND UNDER SEAL PURSUANT TO 15 U.S.C. § 1116** |

### VERIFIED COMPLAINT AND JURY DEMAND

Plaintiffs, The Ambriola Company, Inc. ("Ambriola") and Gennaro Auricchio, S.p.A. ("Auricchio") (collectively, "Plaintiffs"), by and through their counsel, Connell Foley LLP, for their Verified Complaint against Defendants, J.V.M. Sales Corp. ("JVM") and Bozzuto's, Inc. ("Bozzuto's") (collectively, "Defendants") allege as follows:

### SUMMARY OF THE ACTION

1.    Based on a multifaceted investigation conducted by Plaintiffs and experts in the field of food analysis, Defendants have engaged in the sale of adulterated and misbranded artificial cheese using intentional counterfeits of Plaintiffs' valuable Locatelli® grated Pecorino Romano trademarks. Defendants' conduct dilutes the value of Plaintiffs' brand while selling cheese to the public that

1

purports to be authentic Locatelli® grated Pecorino Romano when it is not. Defendants are diminishing Plaintiffs' goodwill and reputation in the marketplace and endangering the public through the sale of an adulterated fake cheese product misrepresented to be 100% Pecorino Romano made from sheep's milk when it is not as matter of law.

2.     Plaintiffs file this action against Defendants for trademark infringement and counterfeiting in violation of Section 32 of the Lanham Act. Pursuant to 15 U.S.C. § 1116, Plaintiffs also file an emergent *ex parte* application for seizure for Defendants' use of counterfeit Locatelli® trademarks and sale of misbranded Pecorino Romano using Plaintiffs' marks.

3.     Specifically, JVM, a competitor cheese manufacturer and wholesale distributor, and Bozzuto's, a competitor wholesale distributor, were caught distributing counterfeit Locatelli® grated Pecorino Romano in bulk quantity to a retail grocery store in New York, Adams Fairacre Farms ("Fairacre"). JVM sold a box of counterfeit Locatelli® grated Pecorino Romano to Bozzuto's, which then sold the counterfeit cheese to Fairacre.

4.     The counterfeit Locatelli® grated Pecorino Romano that was distributed by Defendants was packaged in a box bearing a purported Locatelli® registered trademark. The trademark at issue is owned by Auricchio and licensed to Ambriola. However, Defendants' box did not bear an authentic Locatelli® mark.

2

Ambriola does not distribute authentic Locatelli® in boxes bearing the stamp used by Defendants.

5.    Defendants' counterfeit Locatelli® trademarks on the box also included misbranded nutritional facts that were invalid for Plaintiffs' Locatelli® grated Pecorino Romano. Ambriola does not even stamp its boxes with nutritional labeling, which only appears on the product itself. Defendants' misrepresentation of the cheese's nutritional content is to the public in the name of Plaintiffs. But Plaintiffs did not sell Defendants this fake cheese.

6.    In fact, during all relevant times, Ambriola has never sold Locatelli® grated Pecorino Romano in bulk to Defendants. Ambriola is the sole licensed importer and converter of all Locatelli® products meaning Defendants could only obtain authentic Locatelli® grated Pecorino Romano in bulk from Plaintiffs. But they did not.

7.    Further, Defendants' counterfeit mark indicated that Defendants' fake cheese was distributed from a purported Ambriola property in Jersey City, New Jersey. But, Ambriola has not operated in Jersey City, New Jersey for over 15 years. Ambriola operates from West Caldwell, New Jersey.

8.    On March 3, 2026, Plaintiffs submitted multiple samples of the counterfeit cheese product sold by Defendants to two independent third-party laboratories for testing and analysis. At the same time, Plaintiffs submitted multiple

3

samples of authentic Locatelli® grated Pecorino Romano directly from Ambriola for a comparison of its chemical composition to that of Defendants' counterfeit cheese product.

9.     Experts from two independent laboratories performed analyses that confirmed the cheese sold by JVM and Bozzuto's is not Locatelli® grated Pecorino Romano made from 100% sheep's milk. The product being sold by Defendants as Locatelli® has been subjected to substantial adulteration substituting 100% sheep's milk for cow's milk and other artificial fillers. The cellulose, fat, protein, starch and fiber content of Defendants' counterfeit "Locatelli®" are all materially inconsistent with that of Plaintiff's authentic cheese.

10.     Federal law requires specific disclosure when Romano cheese is made from a mixture of sheep and cow's milk with a label that states "'Romano cheese made from _____', the blank being filled in with the names of the milks used, in order of predominance by weight." 21 C.F.R. § 133.183(e). And only "[w]hen romano cheese is made solely from sheep's milk ... may [it] be preceded by the word 'Pecorino'". *Id.*

11.     "Each of the ingredients used in the food shall be declared on the label as required by the applicable sections of parts 101 and 130 of this chapter..." 21 C.F.R. § 133.183(f). Under Part 101, where the labeling of the food does not disclose all of its ingredients, it is misbranded under federal law. 21 C.F.R. § 101.18. And

4

under Part 130, if food contains an ingredient for which no provision is made in such definition and standard, it fails to conform to the definitions of standard and identity set by federal law. 21 C.F.R. § 130.8.

12.    Cheese that violates the standards set forth in 21 C.F.R. § 133.183(e) is considered misbranded pursuant to New Jersey law. *Italusa Corp., Parmalat, S.p.A v M/V Thalassini Kyra*, 733 F. Supp. 209, 214 (S.D.N.Y. 1990).

13.    Pursuant to 21 U.S.C. § 331 (the Federal Food, Drug and Cosmetic Act), Defendants' misbranding of inferior cheese product as Locatelli® with inaccurate nutritional facts is criminal conduct that can be prosecuted by the Food and Drug Administration ("FDA") in coordination with the Department of Justice ("DOJ").

14.    At bottom, Defendants have been selling a counterfeit product as Locatelli® grated Pecorino Romano that relies upon the goodwill attendant to Plaintiffs' trademarks. The cheese being sold by Defendants is a misbranded and adulterated product that by law cannot be sold as grated Pecorino Romano made from 100% sheep's milk. Defendants' fake cheese is not made from 100% sheep's milk.

15.    Defendants' fake cheese mixture was intentionally placed in a box bearing a counterfeit Locatelli® trademark, thereby infringing upon the valuable Locatelli® trademark and creating a serious risk for consumer health and safety in

5

Plaintiffs' name.

16. The creation and use of a sophisticated, wholesale counterfeit reproduction of a Locatelli® manufacturer nutritional stamp demonstrates that this counterfeiting operation is likely operating at a large scale.

17. In this action, Plaintiffs seek emergent temporary and permanent injunctive relief and a seizure order to cause an immediate and permanent cessation of Defendants' illegal misbranded cheese relying upon Plaintiffs' valuable trademarks. Plaintiffs also seek other injunctive and monetary relief against Defendants for trademark infringement and counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); false descriptions and false designations of origin in commerce in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125); false advertising in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125); trademark infringement in violation of *N.J.S.A.* § 56:4-1; trafficking in counterfeit marks in violation of *N.J.S.A.* § 56:3-13.16; and New Jersey common law claims for tortious interference, unjust enrichment and unfair competition.

### THE PARTIES

18. Ambriola is a New Jersey corporation and subsidiary of Auricchio. Its principal place of business is 7 Patton Drive, West Caldwell, New Jersey 07006. Ambriola, generally, is an American importer of fine Italian cheese. In 2014, Ambriola was acquired by Auricchio – an Italian cheese-making company that

6

manufactures Locatelli® cheese and owns the Locatelli® trademark. As part of the Auricchio family, Ambriola is the sole importer and converter of Locatelli® cheese and is a licensee and designee of the Locatelli® trademark.

19.    Auricchio is a *Società per Azioni* organized under the laws of Italy. Its principal place of business is Via Dante 27, Cremona, Italy 26100. Auricchio, generally, is an Italian cheese-making company that manufacturers various brands of fine Italian cheese. And in 1997, Auricchio acquired – and has since solely owned – the Locatelli® trademark which it exclusively markets in America through its sole importer and converter, Ambriola. Ambriola is a licensee and designee of the Locatelli® trademark that is owned by Auricchio.

20.    JVM is a New Jersey corporation. Its principal place of business is 3401A Tremley Point Road, Linden, New Jersey 07036. JVM is an Italian cheese manufacturer – Milano's® cheese – and is a wholesale distributor of cheese product. JVM is selling counterfeit Locatelli® cheese.

21.    Bozzuto's is a Connecticut corporation. Its principal place of business is 275 Schoolhouse Road, Cheshire, Connecticut 06410. In addition to its principal place of business address, Bozzuto's also has distribution centers located at: 400 Industrial Avenue, Cheshire, Connecticut 06410; 400 North Frontage Road, North Haven, Connecticut 06473; and, 7168 Daniels Drive, Allentown, Pennsylvania 18051. Bozzuto's is a wholesale distributor of food products in New England, New

7

York, New Jersey and Pennsylvania. Bozzuto's is also selling counterfeit Locatelli® cheese.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1338 and 1367 and general principles of ancillary and pendent jurisdiction.

23.    The Court has personal jurisdiction over each of the Defendants because each of the Defendants has sufficient minimum contacts with New Jersey and with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

24.    As alleged herein, both Defendants transacted business in New Jersey and committed tortious acts in commerce in connection with the counterfeiting conspiracy described herein. JVM is a New Jersey entity with its principal place of business in New Jersey. Bozzuto's – a Connecticut entity – purchases counterfeit Locatelli® from JVM. Moreover, because Ambriola – a New Jersey corporation – is the sole importer of Locatelli® cheese, the counterfeiting conspiracy by Defendants necessarily touches New Jersey and this District, rendering the exercise of jurisdiction by this Court permissible.

25.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because Defendants manufactured and sold counterfeit Locatelli®

8

cheese in this District, and/or conspired to operate a counterfeiting operation that manufactured and sold counterfeit Locatelli® cheese in this District all to the detriment of Ambriola, a New Jersey entity with a principal place of business located in New Jersey, and thus a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### AURICCHIO'S LOCATELLI® TRADEMARK AND AMBRIOLA'S LICENSE TO USE AURICCHIO'S LOCATELLI® TRADEMARK

26. Auricchio – a renowned Italian cheese-making company – was founded by its namesake in 1877 in San Giuseppe Vesuviano, Italy. For over a hundred years thereafter, Auricchio specialized in its traditional, artisanal provolone cheese.

27. Stateside, since 1921, Ambriola – based out of New Jersey – has served as an American importer of some of the finest Italian cheeses.

28. In 1997, Auricchio acquired the Locatelli® sheep products division from Nestlé Italy ("Nestlé"), which permitted the entire sheep milk processing cycle to be brought in-house to Auricchio. Accordingly, the Locatelli® trademark was assigned from Nestlé to Auricchio. Accordingly, Auricchio has been the sole owner of the Locatelli® trademark in the United States since 1997. Attached hereto as **Exhibits 1** through **3** is proof of Auricchio's ownership of the Locatelli® trademark.

29. Since 1921, Ambriola has served as an American importer of some of the finest Italian cheeses. In 2014, Ambriola was acquired by Auricchio as a

9

subsidiary. As Auricchio's American subsidiary, Ambriola is the sole American importer and converter[1] of Auricchio's Locatelli® cheese. Accordingly, Ambriola is a licensee and designee of the Locatelli® trademark owned by Auricchio.

30.    In 1979, Ambriola began distributing cheese from a facility in Jersey City, New Jersey. On February 10, 2010, Ambriola ceased operations in Jersey City, New Jersey and began operating solely out of West Caldwell, New Jersey. And because Ambriola is the sole importer and converter of Locatelli® cheese from Auricchio, all Locatelli® cheese distributed in the United States has been distributed from the West Caldwell, New Jersey facility since February 10, 2010.

31.    Ambriola and Auricchio are currently using the Locatelli® trademark in commerce in connection with its sale of cheese, and plan to continue such use in the future. Likewise, both Ambriola and Auricchio prominently display Locatelli® in its advertising and promotional materials.

32.    Ambriola and Auricchio have engaged and continue to engage in activities designed to promote Locatelli® cheese and the business and goodwill associated with its trademark, and to expand the use and reputation of its trademark, trade dress, logos, copyrights and property throughout the United States. The Locatelli® trademark is an invaluable asset to both Ambriola and Auricchio – as

---

[1] A cheese converter processes large blocks of cheese into sliced, shredded or grated forms.

10

owner and licensee/designee of the trademark.

### AMBRIOLA'S RELATIONSHIP WITH JVM AND BOZZUTO'S

33.    Ambriola has never sold Locatelli® cheese to JVM. Ambriola has only sold JVM Ambriola brand Pecorino Romano wheels. An Ambriola brand Pecorino Romano wheel is not Locatelli® cheese and is not grated cheese in bulk. JVM has never purchased Locatelli® grated Pecorino Romano in bulk from Ambriola.

34.    Bozzuto's has purchased 8- and 16-ounce retail cups of Locatelli® grated Pecorino Romano from Ambriola. But Ambriola did not sell Bozzuto's Locatelli® grated Pecorino Romano in bulk during the relevant period.

35.    Since Plaintiffs did not sell either of the Defendants Locatelli® grated Pecorino Romano in bulk during the relevant time period, they should not have been in possession of this product.

### THE DISCOVERY OF DEFENDANTS' COUNTERFEIT LOCATELLI® OPERATION

36.    On December 3, 2025, Ambriola issued a recall of its products that had been sold to distributors and retail stores nationwide between November 3, 2025 and November 20, 2025 after routine testing confirmed the presence of *Listeria monocytogenes* at Ambriola's West Caldwell, New Jersey facility. Attached hereto as **Exhibit 4** is the FDA Recall Announcement. Attached hereto as **Exhibit 5** is the FDA Enforcement Report related to the FDA Recall of Locatelli®, including the Lot Numbers affected.

11

37.    Adams Fairacre Farms ("Fairacre") is a retail grocery store in upstate New York.

38.    In January of 2026, Fairacre contacted Ambriola inquiring whether bulk bags of Locatelli® grated Pecorino Romano that it had purchased were impacted by the recall.

39.    Ambriola does not sell Locatelli® grated Pecorino Romano in bulk to Fairacre. For this reason, Ambriola sought the identity of the person or entity that sold the Locatelli® grated Pecorino Romano in bulk to Fairacre. Fairacre provided an invoice stating that it had purchased the bulk bags of Locatelli® grated Pecorino Romano from Bozzuto's. Attached hereto as **Exhibit 6** is Fairacre's invoice from Bozzuto's.

40.    Again, as mentioned *supra*, Ambriola had not sold Locatelli® grated Pecorino Romano in bulk to Bozzuto's as of that date.

41.    Since September of 2025, Ambriola has been using the 70-year old nationwide food brokerage company, Johnson O'Hare ("JOH"), as its broker. Ambriola requested JOH to ask for the identity of the person or entity that sold the Locatelli® grated Pecorino Romano in bulk to Bozzuto's.

42.    Bozzuto's advised JOH that they purchase their Locatelli® grated Pecorino Romano in bulk from JVM. Again, Ambriola has never sold Locatelli® grated Pecorino Romano in bulk to JVM. Ambriola requested that Fairacre

12

photograph and preserve the box in which Bozzuto's delivered the Locatelli® grated Pecorino Romano in bulk and its contents. Fairacre complied with this directive.

43.   The box photographed by Fairacre was marked with a Locatelli® nutritional stamp that stated that it was imported by Ambriola located in Jersey City, New Jersey:



*Counterfeit Bozzuto's Box Stamp (Not Grated Pecorino Romano)*

44.   Upon examination of Fairacre's photograph, Ambriola determined material discrepancies from the packaging materials it uses in the normal course of business that led Ambriola to believe that the box and its contents were counterfeit.

45.   Authentic bulk Locatelli® grated Pecorino Romano is not sold in a box that bears a Locatelli® nutrition stamp. Ambriola's boxes of authentic Locatelli® grated Pecorino Romano in bulk identify their contents by name and weight with an associated lot number and sell by date.

13



***Authentic Locatelli® Grated Pecorino Romano Box Label***

46.    Plaintiffs' recall specified the lot numbers that were impacted, but the box purchased by Fairacre from Bozzuto's did not include a lot number. Without a lot number, Fairacre could not determine if the Locatelli® grated Pecorino Romano it purchased in bulk was subject to Plaintiffs' recall.

47.    Based on the material differences in packaging shown above, it is apparent that Defendants counterfeited an expired Jersey City Locatelli® nutrition label from Ambriola and used it as a stamp on the box that was sold to Fairacre. This counterfeit nutritional stamp is distinguishable from an authentic Locatelli® nutrition label. Specifically, the stamp states that Ambriola operates from Jersey City, New Jersey. Ambriola has not operated from Jersey City, New Jersey in over

14

15 years. An authentic Locatelli® nutrition label states that Ambriola operates out of West Caldwell, New Jersey. Further, Defendants' counterfeit Locatelli® stamp misspells "Carbohydrates" "Carbohidrates". An authentic Locatelli® nutrition label does not include this misspelling.



*Authentic Locatelli® Pecorino Romano Nutrition Label (**Not Grated** Pecorino Romano)*

48.    Moreover, the counterfeit stamp includes inaccurate nutritional content from an authentic label for Locatelli® hard Pecorino Romano. The counterfeit stamp states that the sodium content is 550mg whereas the authentic nutrition label states that the sodium content is 480mg.

15

49. The serving size on the counterfeit stamp is 1 oz or a 3/4-inch *cube* and authentic Locatelli® label is 1 oz or a 1-inch *cube*. And the counterfeit stamp affixed to the box of purported Locatelli® *grated* Pecorino Romano in bulk delivered to Fairacre is actually for hard cheese. An authentic nutrition label for Locatelli® *grated* Pecorino Romano states that it is "Grated Pecorino Romano" with a serving size measured in tablespoons, not cubes.



***Authentic Locatelli® Grated Pecorino Romano Nutrition Label***

50. The nutrition facts of authentic Locatelli® grated Pecorino Romano are misrepresented by Defendants as follows:

***Nutrition Fact Comparison: Counterfeit v. Authentic***

|  | *Counterfeit (Not Grated)* | *Authentic (Grated)* |
|---|---|---|
| *Serving Size* | 28g (3/4-inch cube) | 1 tbsp (5g) |
| *Calories* | 110 | 20 |
| *Total Fat* | 9g | 1.5g |
| *Sat. Fat* | 6g | 1g |
| *Trans. Fat* | 0g | 0g |
| *Cholesterol* | 30mg | 5mg |
| *Sodium* | 550mg | 90mg |
| *Total Carbohydrate* | <1g | 0g |

| Fiber | 0g | 0g |
|---|---|---|
| Total Sugars | <1g | 0g |
| Protein | 7g | 1g |

51.    Moreover, a plant number was listed on Defendants' box stating that either the contents of the box or the box itself was "Manufactured by Plant No. NJ00009870".



52.    Authentic Locatelli® grated Pecorino Romano boxes sold by Ambriola do not include this "Manufactured By" stamp.

### AMBRIOLA PURCHASES A BOX FROM BOZZUTO'S FOR ANALYSIS

53.    After Ambriola discovered that Defendants were using counterfeit Locatelli® trademarks, Ambriola ordered a box of Locatelli® grated Pecorino Romano in bulk from Bozzuto's.

54.    On or about January 27, 2026, the shipment was delivered to Ambriola in a box bearing the same counterfeit stamp previously observed on the Fairacre shipment. Ambriola was informed by JOH that Bozzuto's purchased this bulk Locatelli® grated Pecorino Romano from JVM.[2] Ambriola preserved Bozzuto's box

---

[2] Remarkably, on February 5, 2026, for the first time, Bozzuto's placed an order for bulk Locatelli® grated Pecorino Romano with Ambriola. But Bozzuto's had not

of Locatelli® grated Pecorino Romano for analysis and testing.

55.    On March 2, 2026, a forensic scientist – Marvin E. Winston ("Winston") – that was retained by Ambriola, opened in a controlled environment: (1) the Bozzuto's box of purported Locatelli® grated Pecorino Romano; (2) an Ambriola 10-pound box containing two 5-pound bags of authentic Locatelli® grated Pecorino Romano; and (3) an Ambriola 20-pound box containing two 10-pound bags of authentic Locatelli® grated Pecorino Romano.

    

***Authentic Locatelli® 10-Pound Box***    ***Authentic Locatelli® 20-Pound Box***

purchased bulk Locatelli® grated Pecorino Romano from Plaintiffs as of January 27, 2026 or at any time relevant to Plaintiffs' discovery of Defendants' counterfeiting operation. Attached hereto as **Exhibit 13** are invoices from Ambriola's bulk Locatelli® grated Pecorino Romano sales to Bozzuto's.

18



*Counterfeit Box Purchased by Ambriola from Bozzuto's*

56.    As seen in the photographs, the two authentic boxes of bulk Locatelli® grated Pecorino Romano do not have a nutrition stamp or "Manufactured By" stamp affixed to the box. The authentic boxes each state a specific "Lot Number." Lot numbers were used by Plaintiffs during the FDA recall to locate Ambriola's product. Defendants' box does not provide a "Lot Number".

57.    As with the box purchased by Fairacre, the counterfeit nutrition stamp on Bozzuto's box of Locatelli® is not an authentic nutrition stamp for Locatelli® grated Pecorino Romano. Instead, it is a counterfeit stamp for hard Locatelli® Pecorino Romano with incorrect nutritional information.

58.    Additionally, Defendants' box is manufactured by a different company than an authentic Ambriola box. Ambriola boxes are manufactured by Weber Packaging Solutions. Defendants' counterfeit box states it was manufactured by Lanco York, Inc.

59.    Defendants' counterfeiting became even more apparent to Ambriola once the boxes were opened. Ambriola includes repackaging labels when it sells

19

authentic Locatelli® grated Pecorino Romano in bulk so that a reseller can repackage the Pecorino Romano for retail sales with accurate nutritional facts. Ambriola's repackaging labels identify the product as "Grated Pecorino Romano" and are provided in sets of 4. The labels are printed in high quality definition with the correct nutrition facts with a serving size measured in tablespoons.

60.    Defendants' counterfeit box contained poor quality labels with blurry ink. Defendants' labels do not indicate the product is "Grated Pecorino Romano". Instead, the counterfeit repackaging labels are for a hard cheese with a serving size measured in cubes. Accordingly, the containers of counterfeit cheese to which Defendants' labels are affixed for retail sale to consumers do not reflect accurate nutritional information.

INTENTIONALLY BLANK

20

61. Remarkably, Defendants' low quality counterfeit labels are printed on a sheet created at Staples®. Ambriola has never used Staples® to print its repackaging labels.



***Authentic Locatelli® Labels***



***Counterfeit Locatelli® Labels***

62. Defendants' packaging of their counterfeit cheese also differs materially from authentic Locatelli® grated Pecorino Romano delivered in bulk. Authentic Locatelli® is sold in bags with the trademark affixed directly onto the packaging. Specifically, Ambriola sells bulk authentic Locatelli® grated Pecorino Romano in two types of bags:

21

 

*Authentic Locatelli® 5-Pound Bag*

*Authentic Locatelli® 10-Pound Bag*

63.    On the other hand, the counterfeit Locatelli® is contained in a clear bag with no Locatelli® branding or trademarks further demonstrating Defendants' fraudulent scheme.

*Counterfeit Locatelli® Bag* ⟶

### CHEMICAL ANALYSIS CONFIRMS THAT THE CHEESE SOLD BY DEFENDANTS IS NOT LOCATELLI® GRATED PECORINO ROMANO

64.    On or around March 3, 2026, Plaintiffs submitted multiple samples of: (a) the counterfeit cheese product sold by Defendants and (b) authentic Locatelli®

grated Pecorino Romano to Certified Laboratories, Inc. ("Certified Laboratories") and Eurofins DQCI ("Eurofins"), independent chemical testing facilities, for analysis.

65. Both Certified Laboratories and Eurofins analytical reports confirm that the counterfeit cheese product sold by Defendants is inconsistent with the chemical composition of authentic Locatelli® grated Pecorino Romano. Attached hereto as **Exhibits 7** is the Certified Laboratories Certificate of Analysis for the counterfeit sample of purported Locatelli® grated Pecorino Romano – sold by JVM to Bozzuto's and by Bozzuto's to Ambriola. Attached hereto as **Exhibit 8** is the Certified Laboratories Certificate of Analysis for the authentic Ambriola sample of Locatelli® grated Pecorino Romano. Attached hereto as **Exhibit 9** is the Eurofins Analytical Report that contains analysis of both the counterfeit JVM/Bozzuto's purported Locatelli® grated Pecorino Romano and the authentic Ambriola Locatelli® grated Pecorino Romano.

66. On March 22, 2026, Winston completed interpretive reports of Certified Laboratories and Eurofins' findings that confirmed that Defendants' product is not authentic Locatelli® Pecorino Romano. Attached hereto as **Exhibit 10** is Winston's evaluation of Certified Laboratories' findings. Attached hereto as **Exhibit 11** is Winston's interpretation of Certified Laboratories' findings. Attached hereto as **Exhibit 12** is Winston's interpretation of Eurofins' findings.

23

67. Specifically, the Certified Laboratories' analysis as interpreted by Winston demonstrates that Defendants' cheese product tested positive for bovine (*i.e.*, cow) DNA whereas Plaintiffs' authentic Locatelli® – like all 100% Pecorino Romano, pursuant to 21 C.F.R. § 133.183 – only contains sheep DNA.

68. Defendants' product was also determined to contain a significant amount of the food preservative sorbic acid, which was reported as potassium sorbate, that was added to the cheese.

69. Further, Defendants' product contains cellulose, an anti-caking agent used to keep grated cheese free-flowing and to minimize clumping, while Plaintiffs' authentic Locatelli® does not include cellulose.

70. Moreover, Certified Laboratories' analysis demonstrates that the nutritional content of Defendants' cheese product is materially inconsistent with that of authentic Locatelli®.

71. Specifically, Defendants' product has a protein level of 19.53%, which is about 40% lower in protein compared to the 25.53% found in the authentic Locatelli® brand Pecorino Romano.

72. Additionally, Defendants' product has a fat content of 24.89%, which is around 24% lower in fat compared to the 32.89% found in the authentic Locatelli® brand Pecorino Romano.

73. Defendants' product also had a total dietary fiber percentage of 9.2%,

24

which was about 188% higher in fiber compared to authentic Locatelli® brand Pecorino Cheese, which was measured at 3.2%. And this added fiber also would serve as an anti-caking agent in a grated cheese like the cellulose.

74. Lastly, the Certified Laboratories report found starch in Defendants' product, which is not a natural component of cheese and is not present in authentic Locatelli®.

75. The Eurofins Analytical Report determined, like the Certified Laboratories analysis, that Defendants' cheese contains bovine DNA. Plaintiffs' authentic Locatelli® Pecorino Romano tested positive for only sheep DNA and negative for bovine DNA.

76. Further, like Certified Laboratories, Eurofins determined that Defendants' cheese product contains a significant amount of the food preservative sorbic acid in the form of potassium sorbate that is not present in Plaintiffs' Locatelli®. The substantial level of potassium sorbate in Defendants' product was artificially added to the cheese to act as preservative prior to sale.

77. Accordingly, both Certified Laboratories and Eurofins' analyses demonstrate that Defendants' empirically are selling an adulterated counterfeit cheese product that has been misbranded as Plaintiffs' Locatelli® using fraudulent trademarks.

25

### JVM'S HISTORY OF SELLING NON-CONFORMING CHEESE AND CREATION OF FALSE BUSINESS RECORDS

78. In 2024, JVM was sued in the United States District Court for the Southern District of Ohio Eastern Division for selling non-conforming grated Romano cheese that failed to comply with regulations set by the Food and Drug Administration ("FDA"). Attached hereto as **Exhibit 14** is the amended complaint for *T. Marzetti Co. v. JVM*, 2:24-cv-642 (S.D. Ohio).

79. Specifically, it was alleged that JVM repeatedly sold cheese that contained anti-caking agents, cellulose and starch beyond the federally regulated permissible limit. Id. at ¶¶11-45.

80. As alleged, JVM – because of past non-conformities – was required by the purchaser to produce, with each delivery of cheese, a Certificate of Analysis that reported the contents of the cheese, including the percentage of anti-caking agents. Id. at ¶¶25-45.

81. Thereafter, JVM sent Certificates of Analysis that reported that the cheese sold was compliant with both federal regulations and those specifications set in a Master Supply Agreement between the parties. *Id.* at ¶¶25-45.

82. However, upon receipt of the cheese from JVM, the purchaser had independent testing and analysis conducted that found significantly excessive and contrary levels of anti-caking agents as to those reported in the Certificates of Analysis produced by JVM. *Id.*

26

83.    These results indicated that the chemical composition of the cheese distributed was in violation of federal regulations and that the Certificates of Analysis provided by JVM for years were fake. *Id.* The independent testing reports demonstrating that JVM's Certificates of Analysis were falsified were annexed to the Complaint.

### THE MISBRANDING AND ADULTERATION OF LOCATELLI® BY DEFENDANTS IS CRIMINAL

84.    Pursuant to 21 U.S.C. § 331 (the Federal Food, Drug and Cosmetic Act), Defendants' misbranding of inferior cheese product as Locatelli® with inaccurate nutritional facts is also criminal conduct that can be prosecuted by the Food and Drug Administration ("FDA") in coordination with the Department of Justice ("DOJ").

85.    Further, the results of the scientific analysis performed by Plaintiffs on Defendants' cheese product indicate that the cheese has been adulterated, i.e., the valuable ingredients of authentic Locatelli® have been substituted by Defendants for inferior ingredients to defraud Plaintiffs and the public. Attached hereto as **Exhibit 15** is an FDA article regarding adulteration. And, "[t]he United States enforces this [violative conduct] through suits for injunctive relief [21 U.S.C. § 332], fines or imprisonment [21 U.S.C. § 333], or seizure of the adulterated food [21 U.S.C. § 334]." NVE Inc. v. HHS, 436 F.3d 182, 185 (3d Cir. 2006). Moreover, 21 U.S.C. § 335 also outlines civil penalties that can be pursued by the FDA and DOJ.

27

### *The Counterfeit Cheese is Difficult to Detect and Indicates a Broader Counterfeiting Scheme*

86.    The counterfeit labelling of Locatelli® cheese at issue is sophisticated

and difficult to detect. Although imperfect, the counterfeit label is on the whole an

accurate replica of an authentic Locatelli® label. Specifically, see a comparison of

the counterfeit Locatelli® nutritional stamp affixed to the boxes sold by Defendants

and an authentic Locatelli® stamp below:



*Counterfeit Locatelli® Stamp*

INTENTIONALLY BLANK

28

87.    The counterfeit stamp is designed to deceive, and has been and will be successful in deceiving retailers into believing that it is a genuine Locatelli® product.



*Authentic Locatelli® Stamp*

88.    Moreover, the counterfeit stamp is an ink stamp applied to the shipped box. Counterfeiters are unlikely to incur the significant upfront cost of creating a sophisticated counterfeit stamping apparatus in order to manufacture only a handful of counterfeit sales and shipments.

89.    For the reasons set forth above, Plaintiffs allege that Defendants and/or their co-conspirators have willfully and knowingly manufactured, sold, and/or dispensed many more counterfeit Locatelli® cheese products, and continue to do so as of the date of this Complaint, putting both consumers and Plaintiffs' valuable trademark at substantial risk.

29

## CLAIMS FOR RELIEF

### COUNT ONE
### (FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1)(A))
### Against both Defendants

90.    Plaintiffs reallege and incorporate by reference the paragraphs above as if fully set forth herein.

91.    In violation of 15 U.S.C. § 1114(1)(a), Defendants, independently and in conspiracy with one another, used in United States commerce, without Plaintiffs' consent, either a reproduction, counterfeit, copy or colorable imitation of the Locatelli® trademark in connection with the sale, offering for sale, distribution or advertising of counterfeit Locatelli® cheese.

92.    Defendants' sale, offering for sale, distribution or advertising of counterfeit Locatelli® cheese that are materially different from authentic Locatelli® cheese are not subject to and subvert Plaintiffs' quality-control measures.

93.    Defendants' improper use of the Locatelli® trademark is likely to cause confusion, or cause mistake or deceive.

94.    Defendants' actions constitute willful infringement of Plaintiffs' exclusive rights to the Locatelli® trademark.

95.    Defendants are directly, contributorily and vicariously liable for their infringement.

96.    As a direct and proximate result of Defendants' conduct, Plaintiffs have

30

suffered irreparable harm to the valuable Locatelli® trademark and their reputation in the cheese industry. Unless Defendants are restrained from further infringement of the Locatelli® trademark, Plaintiff will continue to be irreparably harmed.

97.    Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants' acts are allowed to continue.

98.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable Locatelli® trademark and other damages in an amount to be proven at trial.

## COUNT TWO
## (FEDERAL TRADEMARK INFRINGEMENT - COUNTERFEIT (15 U.S.C. § 1114(1)(B))
## Against both Defendants

99.    Plaintiffs reallege and incorporate by reference the paragraphs above as if fully set forth herein.

100.    In violation of 15 U.S.C. § 1114(1)(b), Defendants, independently and in conspiracy with one another, reproduced, counterfeited, copied or colorably imitated the registered Locatelli® trademark owned by Aurrichio to which Ambriola is the licensee and designee and applied such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the offering for sale, distribution or advertising of counterfeit Locatelli® cheese and that

31

are not subject to and subvert Plaintiffs' quality-control measures; and in connection with which such use that it is likely to cause confusion, or to cause mistake, or to deceive.

101. For example, and without limitation, Defendants used counterfeit, reproduced, copied or colorably imitated Locatelli® stamps on the shipment boxes for counterfeit Locatelli® grated Pecorino Romano that they purchased, advertised and sold.

102. Defendants' actions constitute willful infringement of Plaintiffs' exclusive rights in the Locatelli® trademark.

103. Defendants are directly, contributorily and vicariously liable for their infringement.

104. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable Locatelli® trademark and their reputation in the cheese industry. Unless Defendants are restrained from further infringement of the Locatelli® trademarks, Plaintiff will continue to be irreparably harmed.

105. Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants' acts are allowed to continue.

106. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable Locatelli® trademark and other damages in an

32

amount to be proven at trial.

## COUNT THREE
### (FALSE DESCRIPTION AND DESIGNATION OF ORIGIN IN COMMERCE (15 U.S.C. § 1125))
**Against both Defendants**

107.   Plaintiffs reallege and incorporate by reference the paragraphs above as if fully set forth herein.

108.   In violation of 15 U.S.C. § 1125(a)(1)(A), Defendants, independently and in conspiracy with one another, in connection with the sale of counterfeit Locatelli® cheese that are not subject to and subvert Plaintiffs' quality-control measures, used in commerce a slogan, trade dress, word, term, name, symbol or device, or any combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was or is likely to cause confusion or to cause mistake, or to deceive as to an affiliation, connection or association with Locatelli®.

109.   Defendants' actions constitute willful infringement of Plaintiffs' exclusive rights in the Locatelli® trademark.

110.   Defendants are directly, contributorily and vicariously liable for their infringement.

111.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable Locatelli® trademark and their reputation in the cheese industry. Unless Defendants are restrained from further infringement

33

of the Locatelli® trademarks, Plaintiff will continue to be irreparably harmed.

112. Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants' acts are allowed to continue.

113. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable Locatelli® trademark and other damages in an amount to be proven at trial.

## COUNT FOUR
### (FEDERAL FALSE ADVERTISING (15 U.S.C. § 1125))
### Against both Defendants

114. Plaintiffs reallege and incorporate by reference the paragraphs above as if fully set forth herein.

115. In violation of 15 U.S.C. § 1125(a)(1)(B), Defendants, independently and in conspiracy with one another, in connection with the sale of counterfeit Locatelli® cheese that are not subject to and subvert Plaintiffs' quality-control measures, used in commerce a slogan, trade dress, word, term, name, symbol or device, or any combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of the counterfeit Locatelli® cheese.

116. Defendants advertised, marketed and promoted the counterfeit

34

Locatelli® cheese products to their customers and/or to specific segments of the industry using the Locatelli® trademark, as well as other intellectual property belonging to Plaintiffs.

117. Defendants' actions constitute willful infringement of Plaintiffs' exclusive rights in the Locatelli® trademark.

118. Defendants are directly, contributorily and vicariously liable for their infringement.

119. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable Locatelli® trademark and their reputation in the cheese industry. Unless Defendants are restrained from further infringement of the Locatelli® trademarks, Plaintiff will continue to be irreparably harmed.

120. Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants' acts are allowed to continue.

121. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable Locatelli® trademark and other damages in an amount to be proven at trial.

## COUNT FIVE
### (TRADEMARK INFRINGEMENT (N.J.S.A. § 56:4-1)
### Against both Defendants

122. Plaintiffs reallege and incorporate by reference the paragraphs above as

35

if fully set forth herein.

123. In violation of *N.J.S.A.* § 56:4-1, Defendants, independently and in conspiracy with one another, reproduced, counterfeited, copied or colorably imitated the registered Locatelli® trademark owned by Aurrichio to which Ambriola is the licensee and designee and applied such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the offering for sale, distribution or advertising of counterfeit Locatelli® cheese and that are not subject to and subvert Plaintiffs' quality-control measures; and in connection with which such use that it is likely to cause confusion, or to cause mistake, or to deceive.

124. For example, and without limitation, Defendants used counterfeit, reproduced, copied or colorably imitated Locatelli® stamps on the shipment boxes for counterfeit Locatelli® grated Pecorino Romano that they purchased, advertised and sold.

125. Defendants' actions constitute willful infringement of Plaintiffs' exclusive rights in the Locatelli® trademark.

126. Defendants are directly, contributorily and vicariously liable for their infringement.

127. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable Locatelli® trademark and their reputation

36

in the cheese industry. Unless Defendants are restrained from further infringement of the Locatelli® trademarks, Plaintiff will continue to be irreparably harmed.

128.  Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants' acts are allowed to continue.

129.  As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable Locatelli® trademark and other damages in an amount to be proven at trial.

## COUNT SIX
### (TRAFFICKING IN COUNTERFEIT MARKS (N.J.S.A. § 56:3-13.16)
### Against both Defendants

130.  Plaintiffs reallege and incorporate by reference the paragraphs above as if fully set forth herein.

131.  In violation of *N.J.S.A.* § 56:3-13.16(a)(1), Defendants, independently and in conspiracy with one another, used, without consent of Plaintiffs, a reproduction, counterfeit, copy or colorable imitation of the Locatelli® trademark in connection with the sale, distribution, offering for sale or advertising in the State of New Jersey goods with which the use is likely to cause confusion or mistake or to deceive as to the source of origin of the goods or services.

132.  In violation of *N.J.S.A.* § 56:3-13.16(a)(2), Defendants, independently and in conspiracy with one another, reproduced, counterfeited, copied or colorably

imitated the Locatelli® trademark and applied the mark to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used upon or in connection with the sale or other distribution in the State of New Jersey of goods.

133. Defendants' actions constitute willful infringement of Plaintiffs' exclusive rights in the Locatelli® trademark.

134. Defendants are directly, contributorily and vicariously liable for their infringement.

135. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable Locatelli® trademark and their reputation in the cheese industry. Unless Defendants are restrained from further infringement of the Locatelli® trademarks, Plaintiff will continue to be irreparably harmed.

136. Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants' acts are allowed to continue.

137. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable Locatelli® trademark and other damages in an amount to be proven at trial.

COUNT SEVEN
(TORTIOUS INTERFERENCE)
**Against both Defendants**

138. Plaintiffs reallege and incorporate by reference the paragraphs above as

38

if fully set forth herein.

139. In violation of the common law of New Jersey, Defendants, independently and in conspiracy with one another have intentionally interfered without justification with Plaintiffs' protected interest in the Locatelli® trademark by selling counterfeit, altered and/or falsified Locatelli® grated Pecorino Romano.

140. With malice, Defendants harmed the Locatelli® trademark by infringing upon the mark and selling counterfeit cheese product causing the loss of the prospective economic gain and resulting injury to Plaintiffs.

141. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable Locatelli® trademark and its reputation in the industry. Unless Defendants' conduct is restrained, Plaintiffs will continue to be irreparably harmed.

142. Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants' acts are allowed to continue.

143. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable Locatelli® trademark and other damages in an amount to be proven at trial.

## COUNT EIGHT
### (UNJUST ENRICHMENT)
### Against both Defendants

144. Plaintiffs reallege and incorporate by reference the paragraphs above as if fully set forth herein.

145. By selling counterfeit, altered and/or falsified Locatelli® cheese bearing Plaintiffs valuable trademark independently and in conspiracy with one another, Defendants have been unjustly enriched at Plaintiffs' expense in violation of the common law of New Jersey.

146. Under principles of equity, Plaintiffs are entitled to restitution and/or disgorgement of Defendants' ill-gotten gains.

## COUNT NINE
### (UNFAIR COMPETITION)
### Against both Defendants

147. Plaintiffs reallege and incorporate by reference the paragraphs above as if fully set forth herein.

148. In violation of the common law of New Jersey, Defendants, independently and in conspiracy with one another, have unfairly competed with Plaintiffs by selling the counterfeit, altered and/or falsified Locatelli® cheese product.

149. As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered irreparable harm to the valuable Locatelli® trademark and

40

their reputation in the cheese industry. Unless Defendants are restrained from further infringement of the Locatelli® trademarks, Plaintiff will continue to be irreparably harmed.

150.   Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants' acts are allowed to continue.

151.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable Locatelli® trademark and other damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A.   Preliminary and permanently enjoining Defendants and their subsidiaries, parents, affiliates, agents, servants, employees, members, directors, officers, attorneys and those persons in active concert or participation with them:

    i.   from buying, selling or distributing Locatelli® cheese, whether genuine or counterfeit[3];

    ii.   from using the Locatelli® trademark or any marks confusingly

---

[3] With an exception to Locatelli® cheese that has been purchased directly from Ambriola, such as the Locatelli® grated Pecorino Romano purchased in bulk by Bozzuto's from Ambriola, as detailed by the invoices attached hereto as **Exhibit 13**.

41

similar thereto in connection with the manufacture, sale, offer for sale, distribution, advertisement, or any other use of cheese sale;

iii. from using any logo, trade name or trademark confusingly similar to Locatelli®, which may be calculated to falsely represent or which has the effect of falsely representing that the products of Defendants or of others sponsored by, authorized by, are in any way associated with Locatelli®;

iv. from directly, contributorily and vicariously infringing any of the Locatelli® marks;

v. from otherwise unfairly competing with Locatelli® in the manufacture, sale, offering for sale, distribution, advertisement or any other use of cheese sale;

vi. from falsely representing themselves as being connected with Locatelli® or sponsored by or associated with Locatelli® or engaging in any act which is likely to cause the trade, retailers and/or members of the purchasing public to believe that Defendants are associated with Locatelli®;

vii. from using any reproduction, counterfeit, copy or colorable imitation of the Locatelli® trademark or stamp in connection with publicity, promotion, sale or advertising of cheese;

42

viii. from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being authentic Locatelli® cheese and from offering such goods in commerce;

ix. from destroying any records documenting the manufacture, sale, offer for sale, distribution, advertisement or receipt of any product purporting to be Locatelli® cheese, including without limitation any records concerning payments with regard to Locatelli® products; and

x. from assisting, aiding or abetting any other person or business entity from engaging or performing any of the activities referred to in subparagraphs (i) through (x) above; and

B.     Ordering that, within fifteen (15) days after the entry and service of a preliminary or permanent injunction, Defendants serve and file a written report under oath setting forth in detail, the manner and form in which they have complied with the injunction; and

C.     Ordering that all infringed material be turned over, seized, impounded and/or destroyed; and

D.     Awarding Plaintiffs punitive damages from each Defendant in an

43

amount to be ascertained at trial; and

E.    Awarding Plaintiffs statutory damages (not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed), actual damages, and treble damages in an amount to be ascertained at trial, and costs and attorneys' fees; and

F.    Awarding Plaintiffs an accounting, and an award of: (i) all ill-gotten profits from Defendants' manufacture, sale and/or distribution of the counterfeit Locatelli®; (ii) Plaintiffs' lost profits; and (iii) Plaintiffs' remedial costs; and

G.    Awarding Plaintiffs pre-judgment and post-judgment interest; and

H.    Awarding Plaintiffs such other and further relief as may be just, proper and equitable.

44

## JURY DEMAND

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38(b) of the Federal

Rules of Civil Procedure, of all claims and issues so triable.

Dated: March 30, 2026

By: _____

CONNELL FOLEY LLP
Leo J. Hurley, Jr. (010772004)
Aaron H. Gould (015532009)
Jared F. Hotchkiss (378672021)
*Attorneys for Plaintiffs,*
*The Ambriola Company, Inc. and*
*Gennaro Auricchio, S.p.A.*

Harborside 5
185 Hudson Street, Suite 2510
Jersey City, NJ 07311
Ph:    201.521.1000
Fax:   201.521.0100
E:     lhurley@connellfoley.com

45

## L. CIV. R. 11.2 CERTIFICATION

I hereby certify that to the best of Plaintiffs' knowledge, the matter in controversy is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding.

Dated: March 30, 2026

By: _____

**CONNELL FOLEY LLP**
Leo J. Hurley, Jr. (010772004)
Aaron H. Gould (015532009)
Jared F. Hotchkiss (378672021)
*Attorneys for Plaintiffs,*
*The Ambriola Company, Inc. and*
*Gennaro Auricchio, S.p.A.*

Harborside 5
185 Hudson Street, Suite 2510
Jersey City, NJ 07311
Ph:    201.521.1000
Fax:   201.521.0100
E:     lhurley@connellfoley.com

46

<u>**VERIFICATION**</u>

Under penalties as provided by law pursuant to Rule 11 of the Federal Rules of Civil Procedure, the undersigned, Philip Marfuggi, certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that they verily believe the same to be true.

Dated: March 30, 2026

Philip Marfuggi
*President and CEO of*
*The Ambriola Company, Inc.*

47